**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

Civil Action Number: 3:16-cv-00706-MCR-CJK

WALTER JOSEPH BECKMAN,
On His Own Behalf, and On Behalf
of All Other Individuals Similarly Situated,

Plaintiff,

vs.

WINN DIXIE STORES, INC.

Defendant

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF WALTER JOSEPH BECKMAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE RULE 56

---

**Scott R. Dinin, Esq.**
LAW OFFICES OF SCOTT R. DININ P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Telephone: (786) 431-1333
Facsimile: (786) 513-7700
Email: inbox@dininlaw.com
*Counsel for Plaintiff*

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

I. PRELIMINARY STATEMENT .......... 1

II. STATEMENT OF FACTS .......... 1

III. ARGUMENTS .......... 3

A. SUMMARY JUDGMENT STANDARD .......... 3

B. LEGAL STANDARD FOR PREVAILING UNDER THE ADA .......... 4

C. ANALYSIS OF ACTION UNDER ADA STANDARDS .......... 5

1. Plaintiff Is Disabled .......... 5

2. Defendant's Website, Is A Service of Defendant's Stores and Pharmacies Each of Which Is A Place of Public Accommodation for Purposes of the ADA .......... 6

3. Defendant's Website Has Communications Barriers Relating to Plaintiff's Disabaility That Violate the WCAG 2.0 Guidelines .......... 15

4. Defendant Discriminated Against Plaintiff by Denying Him a Full and Equal Opportunity to Enjoy the Services Defendant Provides .......... 19

D. PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF UNDER THE ADA .......... 25

IV. CONCLUSION .......... 26

V. CERTIFICAITON OF WORD COUNT .......... 28

## EXHIBITS

**EXHIBIT A** – Declaration of Walter Joseph Beckman dated March 21, 2017

**EXHIBIT B** – Report by Equal Entry, LLC, Accessibility Issues regarding the www.winndixie.com website, dated December 2, 2016

**EXHIBIT C** – Deposition of Rodney Cornwell, Senior Director IT Division at Southeastern Grocers (the parent company for Winn Dixie Stores, Inc.) dated December 2, 2016

**EXHIBIT D** – *Nat'l Fedn. of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015)

**EXHIBIT E** – Statement of Interest of the United States, *Nat'l Ass'n of the Deaf v. Harvard Univ.*, No. 3:15-cv-30023-MGM, 2016 U.S. Dist. LEXIS 120121 (D. Mass. Feb. 9, 2016)

**EXHIBIT F** – Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass 2012)

**EXHIBIT G** – Consent Decree, *Nat 'l Fed. of the Blind, et al., United States of America v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014)

**EXHIBIT H** –Statement of Interest of the United States *Juan Carlos Gill v. Winn-Dixie Stores, Inc.*, No. 16-cv-20030-Scola ECF 23

**EXHIBIT I** – Order Deny Motion to Strike Statement of Interest of the United States *Juan Carlos Gill v. Winn-Dixie Stores, Inc.*, No. 16-cv-20030-Scola ECF 32

## TABLE OF AUTHORITIES

**Cases**

*Balderman v. U.S. Veterans Admin.*,
870 F.2d 57 (2d Cir. 1989)……..........................................................................................3

*Camarillo v. Carrols Corp.*,
518 F.3d 153 (2d Cir. 2008)..............................................................................................4

*Carparts Distribution Ctr., Inc. v. Automotive Wholesalers Assoc. of New England, Inc.*, 37 F.3d 12 (1st Cir. 1994).....................................................................................................................8

*Christensen v. Harris County*
(2000) 529 U.S. 576, 587................................................................................................14

*Doe v. Mutual of Omaha Ins. Co.*,
179 F.3d 557 (7th Cir. 1999)..............................................................................................8

*Davis v. BMI/BNB Travelware Company*
Case No. CivDS1504682 (2016).........................................................................................9

*Del-Orden v. Outback Steakhouse of Florida, LLC*
Case No. 16-cv-2319 (2016)……………………………………………………………15

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451 (1992)..........................................................................................................3

*Ferrand v.Schedler, No. 11-926, 2012 WL 1247215, at *1-2 (E.D. La. April 13, 2012)* ………………13

*Juan Carlos Gill v. Winn-Dixie Stores, Inc.*, No. 16-cv-20030-Scola......................................................11

*Mary Jo C. v. N.Y. State & Local Ret. Sys.*,
707 F. 3d 144 (2d Cir. 2013)............................................................................................19

*Miller v. Department of Corrections*,
916 F. Supp. 863 (C.D. I ll. 1996)......................................................................................6

*Moeller v. Taco Bell Corp.*,
No. C 02-cv-5849, 2007 WL 2301 778 (N.D. Cal. Aug. 8, 2007) ....................................13

*Morgan v. Joint Admin. Bd., Rel. Plan of the Pillsbury Co. and Am. Fed ·n of Grain Millers, AFL-CIO CLC*, 268 F.3d 456 (7th Cir. 2001) .......................................................................................8

*Nat'l Fed'n of the Blind v. Target Corp.*,
582 F. Supp. 2d 1185 (N.D. Cal. 2007).............................................................................16

*Nat'l Ass'n of the Deaf v. Harvard Univ.*,
No. 3:15-cv-30023-MGM, 2016 U.S. Dist. LEXIS 120121 (D. Mass. Feb. 9, 2016).................................10

*National Association of the Deaf v. Netflix, Inc.*,
869 F. Supp. 2d 196 (D. Mass. 2012) ....................6

*National Federation of the Blind v. Scribd Inc.*,
97 F. Supp. 3d 565 (D. Vt. 2015) ....................4

*Nat 'l Fed. of the Blind, et al., United States of America v. HRB Digital LLC and HRB Tax Group, Inc.*,
No. 1:13-cv-10799-GAO (entered March 25, 2014)....................11

*New v. Lucky Brand Dungarees Stores, Inc.*,
51 F. Supp. 3d 1284 (S.D. Fla. 2014) ....................10

*Pallozzi v. Allstate Life Ins. Co.*,
198 F.3d 28 (2d Cir. 1999) ....................4

*Powell v. Nat'l Bd. of Med. Exam'rs*,
364 F. 3d 79 (2d Cir.2004)....................3

*Rendon v. Valleycrest Prod., Ltd.*,
294 F.3d 1279 (11th Cir. 2002) ....................9

*Shields v. Walt Disney Parks and Resorts US. Inc.*,
279 F.R.D. 529 (C.D. Cal. 201 1) ....................16

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944)....................13

*Vermont Teddy Bear Co. v. 1-800 Beargram Co.*,
373 F. 3d 241 (2d Cir. 2004)....................3

**STATUTES**

42 U.S.C. § 12101 note: Findings and Purposes of ADA Amendments Act of 2008,
Pub. L. 1 10-325, § 2, Sept. 25, 2008, 122 Stat. 3553....................5

42 U.S.C. § 12101(a)....................20

42 U.S.C. § 12102....................16

42 U.S.C. § 12102(2) ....................5

42 U.S.C. § 12102(4) ....................5

42 U.S.C. § 12181 *et seq.* ....................3

42 U.S.C. § 12181(7)(E) & (F)....................2, 15

42 U.S.C. § 12181(b)(2)(A)(iii)....................23

42 U.S.C. § 12182(a) ....................4

42 U.S.C. § 12188(a)(2)....................25

Section 508 of the Rehabilitation Act ………………………………………………………....21

Section 1194.22 of the Rehabilitation Act ……………………………………………………...21

**RULES & REGULATIONS**

28 C.F.R. § 36.201.........................................................................................................................6

28 C.F.R. § 36.303(c)(1)(ii)...........................................................................................................20

Fed. R. Civ. P. 56……………………………………………………………………………......3

75 Fed. Reg. 43460-01..................................................................................................................10

75 Fed. Register 43464..................................................................................................................10

**OTHER**

Hearing Before the House Subcommittee on the Constitution of the House Committee on the Judiciary, 106th Cong., 2d Sess. 65-010 (2000) ………………….....................................................................10

The United States Department of Justice, *Justice Blogs*, (last visited Feb. 23, 2017), http://www.justice.gov/justice-blogs?promote=All .......................................................................17

The United States Department of Justice, *Justice Department Enters into a Settlement Agreement with Peapod to Ensure That Peapod Grocery Delivery Website Is Accessible to Individuals with Disabilities*, (last visited Feb. 23, 2017), http://www.justice.gov/opa/pr/justice-department-enters-settlement-agreement-peapod-ensure-peapod-grocery-delivery-website ...........................................................................17

Section 508 Standards of Rehabilitation Act, (last visited Feb. 23, 2017), http://www.access-board.gov/guidelines-and-standards/communications-and-it/about-the-section-508-standards/section-508-standards ..........................................................................................................................21

Disney Homepage, "Disney.com | The Official Home for All Things Disney," www.disney.go.com .......16

Peapod Homepage, “Peapod.com | The Official Home for Peapod Online Grocery Ordering and Markets," www.peapod.com ...................................................................................................................17

## I. PRELIMINARY STATEMENT

Plaintiff Walter Joseph Beckman ("Plaintiff") has brought this action on behalf of himself and other individuals similarly situated against Defendant Winn-Dixie Stores, Inc. ("Defendant") for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 et seq. (the "ADA"). Defendant has violated these provisions of law by failing to remove barriers at their business and those barriers have impaired and obstructed the Plaintiff other similarity situated from enjoining shopping at Winn Dixie stores.

The issue before the court is of great importance, yet simple; in what direction is this country moving, toward tolerance and integration or segregation.

Winn-Dixie has operated their business in a manner that completely excludes blind individuals and has made no effort or conceited any desire to make their Website accessible.

This Partial Motion for Summary Judgment is as to Plaintiff Walter Joseph Beckman, and not the Class Members. Plaintiff submits this Memorandum of Law in support of his Partial Motion for Summary Judgment.

## II. STATEMENT OF FACTS

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff Walter Joseph Beckman ("Plaintiff"), submits the following Statement of Material Facts because each of the following facts are undisputed and there is no genuine issue:

1. Plaintiff Walter Joseph Beckman is a legally blind and disabled person within the meaning of the ADA who uses a screen reader in order to access the internet and read website content.

2. This action against Defendant Winn Dixie Stores, Inc. ("Defendant") is regarding violations of ADA associated with its Website ("Website") and its stores.

3. Since Defendant offers a Website that provides services directly associated with the shopping experience at Defendant's grocery stores and in-store pharmacies ("store(s)"), (which qualify the stores as places of public accommodation pursuant to 42 U.S.C. §§s 12181(7)(E), (F) and 28 C.F.R. § 36.104), the Website is an extension of Defendant's stores, and is a place of public accommodation pursuant to 42 U.S.C. §§s 12181(7)(E),(F).

4. The Defendant offers a Website that allows the public to assemble shopping list from weekly sale circulars, fill/refill medicine prescriptions on-line (for pick up or delivery), find store locations, and to obtain in-store coupons, product recall information, and to download pdf home-cooking recipes, brochures, e-books, and magazines; all of which involve the purchase and use of Defendant's merchandise.

5. Defendant's Website is the lone digital source of weekly specials and coupons, which are offered for use in the Defendant's physical stores. Defendant's Website provides links to PDF attachments such as circular of weekly specials and coupons do not contain accessible coding such that visually impaired individuals who require screen reader software to comprehend those PDF images.

6. When Plaintiff visited Defendant's Website, he encountered numerous barriers to his use of the Website, including, but not limited to lack of interface of the Website with Plaintiff's screen reader software, and the fact that the PDF attachments (for weekly specials and coupons) do not contain accessible coding (such that visually impaired individuals who require screen reader software to comprehend those PDF images are unable to comprehend the pdf images, all creating barriers) thus the Website is in violation Title III of the ADA.

7. Plaintiff has filed Notice of Filing Affidavit (Declaration) in support of his Response in Opposition to Defendant's Motion to Dismiss [DE #18], which Declaration [DE #18-1] states that: 1) Plaintiff is a long-time customer of Defendant's stores, 2) Plaintiff has asked Defendant's employees for information on specials, promotions and product information and Defendant's employees do not take the time to assist the Plaintiff and have directed him to Defendant's Website, 3) there are specials and promotions which are only listed within the Defendant's Website and are not available at Defendant's physical stores.

8. Because the weekly specials, coupons and promotions are not available to the Plaintiff, this is tantamount to a textbook barrier to access at Defendant's physical stores.

9. Defendant admits that its Website is inaccessible to Plaintiff and other blind and visually impaired individuals.

10. For all the foregoing, Plaintiff is entitled to injunctive relief under the ADA; 42 U.S.C. § 12181 et seq.

## III. ARGUMENTS

### A. Summary Judgment Standard

Pursuant to Fed. R. Civ. P. Rule 56, a moving party is entitled to summary judgment on a claim where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a); *see also Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 466-68 (1992); *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F. 3d 79, 84 (2d Cir. 2004). It is the moving party's burden to show that no genuine issue of fact exists. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F. 3d 241, 244 (2d Cir. 2004) (citations omitted). Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. U.S. Veterans Admin.*, 870 F.2d 57, 60 (2d Cir. 1989).

The facts presented by Plaintiff Walter Joseph Beckman in this Motion are sufficient for the Court to grant a Partial Summary Judgment in favor of Plaintiff Walter Joseph Beckman as to the Defendant.

**B. Legal Standard for Prevailing Under The ADA**

In order to prevail under the ADA, the following elements must be satisfied:

1. Plaintiff is disabled within the meaning of the ADA; 42 U.S.C. §12182(a).

2. Defendant owns, leases, or operates a place of public accommodation. (42 U.S.C. §12182(a); *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) *see* e.g. *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 32-33 (2nd Cir. 1999) (holding that the ADA, which should be read broadly, "was meant to guarantee more than mere physical access") *National Federation of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 573-76 (D. Vt. 2015) (websites are places of public accommodation for purposes of ADA).

3. Defendant advertises certain specials, promotions, and coupons through paper circulars and on its Website. When shopping at Defendant's store, Plaintiff has asked Defendant's employees for information on specials and for information on products. Defendant's employees have directed/instructed Plaintiff to go online to the website www.winndixie.com ("Website"). (See **Exhibit A,** Declaration at Para. 5)

4. Plaintiff faces many barriers to access Defendant's business, and Defendant failed to provide the appropriate auxiliary aids and services that would allow Plaintiff to shop independently, cost-effectively, and efficiently (with specials and information available from the Website). (**Exhibit A** Declaration of Plaintiff)

5. Plaintiff has been unable to effectively communicate with Defendant, and therefore could not enjoy the same shopping experience as experienced by the public and has been left

feeling stigmatized, humiliated, and excluded.

6. Further, Plaintiff has been inhibited, hindered and prevented from receiving the best prices of products (through the use of coupons and weekly specials), product information, and other benefits of shopping at Winn Dixie as enjoyed by the sighted public. (Complaint, DE #1 and **Exhibit A** Declaration of Plaintiff).

7. The facts support that Defendant discriminated against Plaintiff by denying him a full and equal opportunity to enjoy the goods and services Defendant provides to the public. (42 U.S.C. §12188(a)); *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008)

## C. Analysis of Action Under ADA Standards

### 1. Plaintiff Is Disabled.

In midlife, Plaintiff became blind due to a rare genetic defect; Plaintiff has been completely blind ever since. Plaintiff is a person with a disability as contemplated and defined by the ADA (Undisputed Fact No. 1; **Exhibit A**, Declaration of Plaintiff ¶ 2). In amending the ADA, Congress sought in part specifically "to convey that it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, and to convey that the question of whether an individual's impairment is a disability should not demand extensive analysis." (42 U.S.C. §12101 note: Findings and Purposes of ADA Amendments Act of 2008, Pub. L. 1 10-325, § 2, Sept. 25, 2008, 122 Stat. 3553.)

The ability to see is clearly defined by the ADA as a major life function (42 U.S.C. §12102(2).

The ADA defines "disability" as follows: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment." (42 U.S.C. §12102(2))

Congress requires broad rules of construction for the definition of "disability": "Rules of construction regarding the definition of disability. The definition of "disability" in paragraph (I) shall be construed in accordance with the following: (A) The definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act ... (E)(I). The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as - ... (II) use of assistive technology; (III) reasonable accommodations or auxiliary aids or services …" (42 U.S.C. § 12102(4))

Plaintiff's blindness qualifies him as disabled under the ADA; and the fact that he uses aids to assist him with his disability (such as a screen reader for internet websites) does not change that fact. Plaintiff's disability is addressed specifically by the court: "Here, [Plaintiff] is blind in both eyes. Thus, [he] is substantially limited in the major life activity of seeing. Accordingly, [Plaintiff] has established the first element of an ADA claim - [he] is disabled for purposes of the ADA." (*Miller v. Department of Corrections*, 916 27 F. Supp. 863, 866 (C.D. III. 1996).)

**2. Defendant's Website Is A Service of Defendant's stores and pharmacies, Each of Which Is A Place of Public Accommodation for Purposes of the ADA.**

The ADA specifically provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation." (42 U.S.C. §12182(a); 28 C.F.R. §36.201). A list of 12 categories of entities, grouped according to the goods and services they offer, are defined as public accommodations. *Id.* §12181 (7).

In *National Association of the Deaf v. Netflix. Inc.*, 869 F. Supp. 2d 196, 201 (D. 13 Mass. 2012, the District Court rejected Netflix's application of *ejusdem generis* outright and

found its interpretation of the ADA's plain language to be unpersuasive. *Id.* In looking at the plain language of the statute, the District Court noted the ADA covered the services ***"of"*** a public accommodation and not services ***"in"*** a public accommodation. To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute." *Id.* (citing 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations ***of*** any place of public accommodation. . ."). Accordingly, websites are services, privileges, advantages and accommodations of places of public accommodation.

Case law had confirmed Congress' intent that "the types of accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d at 200 (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc*., 97 F. Supp. 3d 574 (D. Vt. 2015), (same) (emphasis added). In *Scribd,* the court ruled by the reasoning of *Pallozzi* that a purely online service is a place of public accommodation, (s*ee Scribd Inc.* at 565, 571) and denied *Scribd*'s motion to dismiss, and found that Plaintiffs…sufficiently alleged that Scribd [an exclusively online business] owns, leases, or operates a place of public accommodation. *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 32-33 (2d Cir. 1999)

In *Pallozzi,* the plaintiffs alleged that an insurance company had discriminated against them on the basis of mental disability when they refused to issue them a joint life insurance policy. Id. The court held that an entity covered by Title III of the ADA "is not only obligated by the statute to provide disabled persons with physical access, but is also prohibited from refusing to sell them its merchandise by reason of discrimination against their disability." *Id*. The Court's reasoning required that defendant at least owned, operated, or leased a place of physical location,

which was satisfied as the insurance company operated an insurance office – which is explicitly defined in the ADA. Thus, in *Pallozzi*, the court found that a "public accommodation" which provides the goods and services listed in Title III's enumerated statutory categories is covered by the ADA, even when those goods or services are not offered at its public location, and that the ADA was meant to guarantee more than mere physical access to particular types of businesses. *Id.*

Here, Defendant operates approximately five hundred grocery stores and two hundred eighty pharmacies in neighborhoods across the South, yet concurrently discriminates against Plaintiff and other similarly situated by refusing to render its Website accessible. By such refusal, and also refusing to provide to Plaintiff weekly specials and coupons which it provides to the public, Defendant has further segregated blind patrons such as the Plaintiff.

Other courts have held that *Pallozzi* "could be extended to a company's refusal to sell a disabled person its merchandise on the internet and, by extension, imposing barriers that have essentially the same effect. Otherwise, a company could freely refuse to sell its goods or services to a disabled person as long as it did so online rather than within the confines of a physical office or store." *Nat'l Fedn. of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 571 (D. Vt. 2015). *See* also *Carparts Distribution Ctr., Inc. v. Automotive Wholesalers Assoc. of New England, Inc.*, 37 F.3 12, 19-20 (1st Cir. 1994) (holding that "public accommodations" encompasses more than actual physical structures and includes the defendant insurance company); *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (noting that a "place of public accommodation" encompasses facilities open to the public in both physical and electronic space, including websites); *Morgan v. Joint Admin. Bd., Rel. Plan of the Pillsbury Co. and Am. Fed 'n of Grain Millers, AFL-CIO-CLC*, 268 F.3d 456, 459 (7th Cir. 2001) ("The defendant asks us to interpret "public accommodation" literally, as denoting a physical site,

such as a store or hotel but we have already rejected that interpretation."); *National Association of the Deaf v. Netflix. Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (denying motion for judgment on the pleadings and holding a website constituted a place of public accommodation); *Rendon v. Valleycrest Prod., Ltd.*, 294 F.3d 1279, 1280-81 (11th Cir. 2002) (holding that the telephone process for selecting contestants for "Who Wants to be a Millionaire" discriminated against people with hearing and other physical disabilities).

In a very similar matter with analogous facts, Scribd failed to provide non-visual means of operations to its visually impaired customers via its online library, e-book, and audiobook service. Scribd’s website lacked programming to be accessible through screen reading software. As such, Scribd denied blind persons access to all of the services, privileges, advantages, and accommodations that Scribd offered. Although Scribd operated no physical space open to the public, the court found that Plaintiffs had persuasively argued that Scribd's services fall within at least one of the following categories: "place of exhibition or entertainment," a "sales or rental establishment," a "service establishment," a "library," a "gallery," or a "place of public display or collection." *Nat'l Fedn. of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 576 (D. Vt. 2015).

Moreover, summary judgment for a similar case was granted in a California State court relying on the ADA statute as applied in the Ninth Circuit. In *Davis v. BMI/BNB Travelware Company* Case No. CivDS1504682 (2016), the plaintiff alleged that the defendant violated the ADA by failing to provide full and equal access to the goods and services of its retail location through its www.ColorodoBaggage.com website by operating its website in a manner that was incompatible with screen reading software. The court granted Plaintiffs’ entire motion for summary judgment with regard to injunctive relief and statutory damages.

In addition to the foregoing case authority, the Department of Justice (“Department or “DOJ”) has consistently "taken the position that the ADA applies to the Internet and web-based goods and service providers." (*Scribd*, supra, 97 F. Supp. 3d at 574 (citing Letter from Deval L. Patrick, Assistant Att'y Gen., to Senator Tom Harkin (Sept. 9, 16 1996, attached hereto as **Exhibit D**) ("Covered entities under the ADA are required to provide effective communication, regardless of whether they generally communicate through print media, audio media, or computerized media such as the Internet."); Applicability of the Americans with Disabilities Act (ADA) to Private Internet Sites: Hearing Before the House Subcommittee on the Constitution of the House Committee on the Judiciary, 106th Cong., 2d Sess. 65-010 (2000) ("It is the opinion of the Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Websites and services."); 75 Fed. Reg. 43460-01 (July 26, 2010) ("The DOJ believes that Title III reaches the Websites of entities that provide goods or services that fall within the 12 categories of 'public accommodations,' as defined by the statute and regulations.") The *Scribd* court noted further that "[t]he DOJ is currently in the process of promulgating regulations that would codify the position it has taken in order to establish requirements for making websites accessible. *See* 75 Fed. Reg. 43460-01." (97 F.Supp. 3d at 574-75.) The DOJ has expressly stated that "the Department has been clear that the ADA applies to Web sites of private entities that meet the definition of 'public accommodations.” 75 Fed. Register 43460, 43464 (July 26, 2010).

The DOJ has been proactively enforcing application of the tenants of the ADA with respect to private operators of inaccessible commercial websites via its Statements of Interest. Examples of such enforcement as evidenced in: *National Ass 'n of the Deaf, et al. v. Harvard University, et al.,* Civil Action No. 3:15-cv-30023-MGM, *New v. Lucky Brand Dungarees*

*Stores, Inc.*, No. 14-CV-20574, *Nat 'l Fed. of the Blind, et al., United States of America v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO, and *Juan Carlos Gill v. Winn-Dixie Stores, Inc.*, No. 16-cv-20030-Scola.

Most recently, the DOJ has filed Statement of Interest briefs in several federal court actions continuing to make its position clear that the ADA currently obligates operators of websites to provide effective communication to disabled individuals to ensure equal access to commercial websites. For example, on June 25, 2015, the DOJ filed a Statement of Interest in a case against Harvard University regarding the inaccessibility of Harvard's website in *National Ass 'n of the Deaf, et al. v. Harvard University, et al.*, Civil Action No. 3:15-cv-30023-MGM [ECF #33] (D. Mass. case filed 2/12/15); Request for Judicial Notice (attached hereto as **Exhibit E**). The DOJ opposed Harvard's motion to dismiss for failure to state a claim and motion to dismiss on jurisdictional grounds. In particular, the DOJ noted that the ADA "currently obligate[s] Harvard to provide effective communication to ensure equal access to its online programming services, and resolution of Plaintiffs' claim involves a straightforward application of longstanding statutory and regulatory requirements. For more than two decades, federal courts have resolved effective communication claims brought under the ADA . . . in a wide range of contexts, including claims alleging unequal access to goods, benefits and services provided through websites or other electronic media." (Statement of Interest at 2) (emphasis in original). The DOJ described "the heart of this case" as "a straightforward claim that Harvard failed to provide auxiliary aids or services necessary to ensure effective communication and equal access to Harvard's online programming." (*Id.* at 8) The DOJ urged the court to "reject Harvard's attempt to convert a clear-cut ADA claim into something dependent on future rulemaking." (*Id.* at 11)

Similarly, on April 10, 2014 in *New v. Lucky Brand Dungarees Stores, Inc*., No. 14-CV-20574 (S.D. Fla. case filed Feb. 14, 2014), the DOJ filed a Statement of Interest brief in an ADA case brought against the operator of a clothing retail store with point-of-sale devices ("POS"), in which the DOJ took the position that "title III' s general prohibition against discrimination on the basis of disability and its requirements to provide auxiliary aids and services where necessary to ensure effective communication establish obligations under the ADA with respect to [defendant's] use of POS devices to provide payment services to its customers." *New v. Lucky Brand Dungarees Stores, Inc*., No. 14-CV-20574 [ECF #19 at 6] (S.D. Fla. April 10, 2014).

Significantly, the DOJ stated "[T]he Department has long considered websites to be covered by title III despite the fact that there are no technical requirements for websites currently in the regulation or ADA Standards." *See* generally Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc*., 869 F. Supp. 2d 196 (D.Mass 2012), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the DOJ's history of Public pronouncements on the topic), attached hereto as **Exhibit F**; *see* also Consent Decree, *Nat 'l Fed. of the Blind, et al., United States of America v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website)" (attached hereto as **Exhibit G**) *New v. Lucky Brand Dungarees Stores, Inc.*, No. 14-CV-20574 [ECF No. 19 at 7] (S.D. Fla. Apr. 10, 2014).

Most recently, and within the Eleventh Circuit, the DOJ filed it Statement of Interest pursuant to 29 U.S.C. §517 and stated "United States respectfully submits this Statement of Interest to clarify public accommodations' longstanding obligation to ensure that individuals with disabilities are not excluded, denied services, or treated differently than other individuals

because of the absence of auxiliary aids and services, such as accessible electronic technology. This obligation means that websites of places of public accommodation, such as grocery stores, must be accessible to people who are blind, unless the public accommodation can demonstrate that doing so would result in a fundamental alteration or undue burden." *Juan Carlos Gill v. Winn-Dixie Stores, Inc.,* No. 16-cv-20030-Scola [ECF No. 23 at 2] (S.D. Fla. December 12, 2017) (attached hereto as **Exhibit H**). In *Gil*, the Court denied defendant's Motion to Strike the DOJ's Statement of Interest and cited *Ferrand v. Schedler,* No. 11-926, 2012 WL 1247215, at *1-2 (E.D. La. April 13, 2012) (stated that the Statement of Interest provided a valuable perspective of the DOJ, and further stated "the United States has broad discretion to attend to any interests of the United States" (see *Gill* ECF No. 32 at 2, 3 at **Exhibit I**).

The DOJ has also threatened legal action or has brought suit against private website owners and operators, which actions have resulted in consent decrees and settlement agreements with private website owners and operators, and other public pronouncements, which are entitled to deference, *see Skidmore v. Swift & Co*., 323 U.S. 134, 140 (1944); *Moeller v. Taco Bell Co17J.*, No. C 02-cv-5849, 2007 WL 2301 778, at *11 n. 18 (N.D. Cal. Aug. 8, 2007) (giving deference to the DOJ's interpretation of ADA standards expressed in an amicus brief filed in another action).

Such efforts by the DOJ are not surprising given that "the legislative history of the ADA makes clear that Congress intended the ADA to adapt to changes in technology." *Netflix*, 869 F. Supp. 2d at 200-01. (quoting H.R. Rep. 101-485(11), at 108 (1990)) ("the Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times.").

The position of the DOJ with respect to the question of whether the ADA statute and its current implementing regulations are currently enforceable against commercial website owners and operators to ensure the accessibility of such websites is entitled to deference in the federal courts, and thus should be respected and deferred to here as well. Specifically, the DOJ's views "are entitled to so-called *Skidmore* deference insofar as they 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" (*Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).) Because "place of public accommodation" is a term defined by statute, not regulation, the DOJ's interpretation that a website with a nexus to a physical place should be given *Skidmore* deference "only to the extent that [it has] 'the power to persuade'." (*Christensen v. Harris County* (2000) 529 U.S. 576, 587)). The DOJ's views as to whether or not the ADA covers the websites of public accommodations should be deemed to have the "power to persuade" and are "entitled to respect" under Skidmore.

Thus, under the DOJ's explicit guidance, which is entitled to substantial deference, it is clear that:

- Websites are covered by Title III of the ADA regardless of whether specific, technical requirements for websites are in the DOJ's regulations.
- Current regulations incorporate specific obligations for effective communication with disabled persons such as the visually impaired.
- Until the process of establishing specific technical requirements is complete for certain topics, public accommodations must still comply with Title III's more general requirements of nondiscrimination and effective communication.

Under the guidance in *Pallozzi*, *Scribd*, *Gil*, and similar cases and the DOJ's own guidance, Defendant's website constitutes a service, privilege, advantage, and accommodation of

Defendant's public accommodations under the ADA as a grocery store (42 U.S.C. §12181(7)(E)), and as a pharmacy (42 U.S.C. §12181(7)(F)).

At all times relevant to this action, Defendant owns and operates a chain of grocery and pharmacy stores under the Winn-Dixie brand (Undisputed Fact No. 3). Defendant's grocery and pharmacy stores are clearly and explicitly defined by the ADA. *See* 42 U.S.C. §§s 12181 (7)(E), (F). Defendant's Website provides access to weekly specials, coupons, promotions, product information, and the ability to fill/re-fill prescriptions. As such, the Website is an extension of Defendant's grocery and pharmacy stores (Undisputed Fact Nos. 4 and 5). Accordingly, Defendant's Website is subject to the ADA.

**3. Defendant's Website Has Communication Barriers Relating to Plaintiff's Disability That Violate the provisions of law pursuant to the ADA.**

Plaintiff anticipates that in opposing this Motion, Defendant will note that there are no officially adopted accessibility standards promulgated by the DOJ whereby barriers in its Website could be evaluated against, and that Plaintiff therefore cannot obtain the relief he seeks. This argument ignores the fact that the federal courts, despite the lack of "official" accessibility standards, have allowed website claims under the ADA to go forward, that the DOJ has for some time recognized the applicability of the ADA to website accessibility cases, and that the DOJ and the courts have sanctioned the use of the guidelines such as WCAG 2.0 Guidelines in evaluating website accessibility. Based on this background, as set forth below, this Court should apply those Guidelines and grant this Motion.

First, the court should consider the court's finding in *Del-Orden v. Outback Steakhouse of Florida, LLC* Case No. 16-cv-2319 (2016), which found that the standards set by WCAG 2.0 was/is an appropriate standard for website accessibility requirements of the ADA. The Court declared that "it is therefore ORDERED that Defendant Outback Steakhouse of Florida, LLC

and its parents, subsidiaries, and related entities bring their websites into substantial conformance with the Web Content Accessibility Guidelines (WCAG) 2.0 Level AA, *which are hereby determined by the Court to be an appropriate standard to judge whether Defendant is in compliance with the accessibility requirements of the ADA*." *(*No. 16-cv-2319 at ECF #13 Motion for Judgment filed by Jose Del-Orden, signed by Judge Oetken on 9/13/2016) *(Emphasis added).*

Second, the federal courts have not seen the lack of specific standards as an impediment to website-related ADA cases. Indeed, in granting the plaintiffs' motion for class certification, the federal district court in *Shields v. Walt Disney Parks and Resorts US. Inc.* stated:

> "Defendants assert that "there is no accepted accessibility standard" and points out that the Department of Justice "is yet to determine which standards would apply to websites." [Citation]... The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the visually impaired. Indeed, nearly three years ago-presumably when website accessibility standards were even less settled -Target certified a class of "[a]ll legally blind individuals in the United States who have attempted to access Target.com and as a result have been denied access to the enjoyment of goods and services offered in Target stores." (279 F.R.D. at 559 (citing *National Federation of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1191) (N.D. Cal. 2007*).*

The *Shields* court went on to certify the following website class: "All visually impaired individuals considered to have a physical disability, as that term is defined in 42 U.S.C. §12102, who have been or who will in the future be unable to access one or more of the websites maintained by Defendants such as www.disney.go.com and were or will be denied equal

access to Defendants' theme parks, hotels, restaurants and stores and the numerous goods, services and benefits offered to the public through Defendants' websites." (279 F.R.D. at 560.)

Third, this Court should give deference to the DOJ's adoption of the WCAG 2.0 Guidelines in specific litigation regarding websites. For example, the private defendant in *National Federation of the Blind, et al. v. HRB Digital LLC, et al.*, No. 1:13-cv-10799-GAO (D. Mass. filed April 8, 2013), entered into a consent decree with the DOJ agreeing to conform its website to Level AA Success Criteria under version 2.0 of the WCAG. [ECF #60 at 5] (D. Mass. Mar. 24, 2014).

The DOJ has similarly entered into a settlement agreement with another grocer requiring it to conform its website, www.peapod.com, to (at minimum) WCAG 2.0 Level AA Success Criteria. The DOJ's November 17, 2014 press release is available at: http://www.justice.gov/opa/pr/justice-department-enters-settlement-agreement-peapod-ensure-peapod-grocery-delivery-website.

In its May 12, 2015 Justice Blogs, DOJ highlighted the fact that it has entered into several agreements requiring employers to ensure that their online job application websites are accessible in compliance with WCAG 2.0 AA, which it described as "industry guidelines for making web content accessible." The Justice Blogs are available on the Internet at the link at http://www.justice.gov/justice-blogs?promote=All.

The fact that the DOJ has not expressly adopted specific website guidelines does not negate the decades-old implementing regulation promulgated by the DOJ, which is precisely why the DOJ has been filing Statement of Interest briefs and entering into consent decrees with commercial website owners whereby such owners have been obligated to conform their respective websites to the accessibility measures per WCAG 2.0 Guidelines. Regardless of

whether any website-specific implementing regulations have been promulgated or not by the DOJ, which is the relevant enforcement agency (42 U.S.C. §12188(b)(l)(A)(i) & (B)), and which is the agency charged with promulgating regulations to carry out the provisions of Title III of the ADA (42 U .S.C. § l 2 l 86(b)), does not negate the enforceability of the ADA.

When applying WCAG 2.0 Guidelines to www.winndixie.com, it is clear that Defendant has violated said guidelines. According to Equal Entry expert report (**Exhibit B**), the Defendant exhibits the following trends among its accessibility issues:

1. Keyboard accessibility is not thoroughly available on the site. Some items in the tab order are not visible but still receive focus (such as menu items and filter pane options), and other items which are essential do not receive focus at all.
2. Timed items (such as a carousel control) cannot be paused by users of assistive technology, who may need additional time to read and understand the content.
3. A variety of user controls (such as buttons and checkboxes) are not labeled programmatically. Without programmatic description, an assistive technology such as a screen reader will not be able to describe these elements. This means that a blind user with a screen reader cannot navigate or use much of the website overall.

The Equal Entry expert report (**Exhibit B**) provides ten illustrated examples of accessibility issues related to the following four WCAG guidelines:

Guideline 2.1 - Keyboard Accessible; Make all functionality available from a keyboard.

Guideline 2.2 - Enough Time; Provide users enough time to read and use content.

Guideline 2.4 – Navigable; Provide ways to help users navigate, find content, and determine where they are.

Guideline 4.1 – Compatible; Maximize compatibility with current and future user agents, including assistive technologies

According to Equal Entry expert report (**Exhibit B**), the Defendant should implement the following changes to its Website:

1. Incorporating quick checks of keyboard access into the standard testing that is done by development or test teams before checking in code or going live with updates. This can

be as simple as performing all tests that are already normally done, but doing them solely from the keyboard (TAB, arrow keys, Enter/Space, ESC) instead of via the mouse.
2. Learning and using the Accessible Rich Internet Applications [WAI-ARIA] standard to enable custom controls to provide more details to assistive technology. Equal Entry can assist with training here if needed.
3. Testing all design concepts for color contrast compliance during development phases.
4. Scheduling a meeting with Equal Entry to address items in the issue list.
5. Utilizing an accessibility partner on an hourly basis to develop and review solutions to issues.

Under these circumstances, and according to the WCAG 2.0 Guidelines the deference the DOJ accords them, this Court should grant this Motion for Partial Summary Judgment.

**4. Defendant Discriminated Against Plaintiff by Denying Him a Full and Equal Opportunity to Enjoy the Goods and Services Defendant Provides to the Public.**

The ADA's "sweeping purpose [is to] … forbid discrimination against disabled individuals in major areas of public life." *Mary Jo C. v. N.Y. State & Local Ret. Sys*., 707 F. 3d 144, 160 (2d Cir. 2013). However, Defendant admits that its Website is not accessible to the visually impaired (undisputed fact No. 9). When Defendant's person with the most knowledge of Defendant's Website was asked if he was aware of Defendant's Website had software that detects if someone is using a screen reader, Defendant's representative stated that he was not aware of such software; see Deposition of Rodney Cornwell, Defendant's Senior Director, IT Division (**Exhibit C**, page 24 lines 12-13). Defendant's representative further stated its Website hasn't been "tested or validated that it can handle helping the visually impaired" (**Exhibit C**, page 43 lines 22-25).

When asked if Defendant had provisions for a blind individual to access coupons which are only available online at its stores, Defendant's representative stated that it has no device to provide to customers to preform that function. (**Exhibit C**, page 43 lines 5-18).

In the modern digital age with increasing preference and reliance on the internet, adequate measures need to be taken to ensure that visually impaired people are not discriminated

against. There is no doubt that the visually impaired cannot navigate a website and make purchases online unless Defendant removes barriers to access. Defendant has admitted that the most pertinent of those features have not been implemented (**Exhibit C**, page 43 lines 22-25).

Even if the Court believes that WCAG 2.0 Guidelines is not the de facto standard, at the bare minimum, Defendant is required to allow reasonable accessibility to allow blind consumers to navigate its Website. If blind consumers are never able to comprehend weekly specials and coupons, they can never take advantage of money saving specials afforded to the general public. Likewise, if blind consumers are never able to navigate the prescription section of the Website, they can never complete an online prescription order or re-fill.

"The Nation's proper goals regarding individuals with disabilities are to assure the equality of opportunity, full participation, *independent living*, and economic self-sufficiency for such individuals." 42 U.S.C. § 12101(a). Independence is specifically provided for in Title III regulations. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and *in such a way as to protect the privacy and independence* of the individual with a disability." 28 § C.F.R. 36.303(c)(1)(ii) (emphasis added). Title III is intended to help further the independence of disabled individuals, to ensure disabled individuals have equal opportunities for independent living. As such, Defendant must be required to provide the appropriate programming to facilitate the intention of independent living in accordance with Title III.

There are well-established guidelines for making websites accessible to blind people. These guidelines have been in place for at least several years and have been followed successfully by other large business entities in making their websites accessible. The Web Accessibility Initiative (WAI), a project of the World Wide Web Consortium which is the

leading standards organization of the Web, has developed guidelines for website accessibility, which include WCAG versions 2.0 and 1.0. Winn Dixie accepts and benefit from The Supplemental Nutrition Assistance Program (SNAP), which provides benefits to low-income individuals and families and provides economic benefits to communities, therefore Section 508 of the Rehabilitation Act applies. The federal government has promulgated website accessibility standards under Section 508. Section 1194.22 of the Rehabilitation Act details web-based intranet and internet information and applications: "The Board interprets paragraphs (a) through (k) of this section as consistent with the following priority 1 Checkpoints of the Web Content Accessibility Guidelines 1.0 (WCAG 1.0) (May 5, 1999), published by the Web Accessibility Initiative of the World Wide Web Consortium. Such mandated requirements are as following (http://www.access-board.gov/guidelines-and-standards/communications-and-it/about-the-section-508-standards/section-508-standards):

(a) A text equivalent for every non-text element shall be provided (e.g., via "alt", "longdesc", or in element content).

(b) Equivalent alternatives for any multimedia presentation shall be synchronized with the presentation.

(c) Web pages shall be designed so that all information conveyed with color is also available without color, for example from context or markup.

(d) Documents shall be organized so they are readable without requiring an associated style sheet.

(e) Redundant text links shall be provided for each active region of a server-side image map.

(f) Client-side image maps shall be provided instead of server-side image maps except where the regions cannot be defined with an available geometric shape.

(g) Row and column headers shall be identified for data tables.

(h) Markup shall be used to associate data cells and header cells for data tables that have two or more logical levels of row or column headers.

(i) Frames shall be titled with text that facilitates frame identification and navigation.

(j) Pages shall be designed to avoid causing the screen to flicker with a frequency greater than 2 Hz and lower than 55 Hz.

(k) A text-only page, with equivalent information or functionality, shall be provided to make a web site comply with the provisions of this part, when compliance cannot be accomplished in any other way. The content of the text-only page shall be updated whenever the primary page changes.

(l) When pages utilize scripting languages to display content, or to create interface elements, the information provided by the script shall be identified with functional text that can be read by assistive technology.

(m) When a web page requires that an applet, plug-in or other application be present on the client system to interpret page content, the page must provide a link to a plug-in or applet that complies with §1194.21(a) through (l).

(n) When electronic forms are designed to be completed on-line, the form shall allow people using assistive technology to access the information, field elements, and functionality required for completion and submission of the form, including all directions and cues.

(o) A method shall be provided that permits users to skip repetitive navigation links.

(p) When a timed response is required, the user shall be alerted and given sufficient time to indicate more time is required.

These guidelines are readily available via the internet, so that a business designing websites can easily access them. Without these basic components, a website will be inaccessible to a blind person using a screen reader. Even though such guidance is readily achievable, Defendant has stated that that it has not undertaken any such actions; see **(Exhibit C**, page 43 lines 22-25).

Additionally, Defendant's representative has stated that he is unaware if the Defendant has a system of training to ensure that the individuals with disabilities are not discriminated against. (**Exhibit C**, page 22 lines 3-21) Under the ADA's specific prohibitions, discrimination includes "[a] failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. §12181(b)(2)(A)(iii).

Moreover, Defendant has refused to even inquire to the extent blind individuals can or cannot access its website. For instance, in Defendant's representative admitted that Defendant's Website hasn't been "tested or validated that it can handle helping the visually impaired" (**Exhibit C**, page 43 lines 22-25). It is a fundamental tenet of website accessibility for user interface elements to be keyboard accessible. Without such, it is impossible for Plaintiff to navigate or make purchases on a website. The alternative to keyboard navigation is mouse manipulation, which is a completely visual function.

This evidences that Defendant has maintained, constructed, and operated a site that violates the ADA at the lowest possible standard. Defendant is aware of such violations and

refuses to implement accessibility protocols to ensure the full and equal enjoyment to its products and services to the disabled.

Defendant repeatedly admits to its discrimination to the visually impaired and its refusal to account for the blind community in constructing, maintaining, and operating its Website. Defendant's representative has admitted that he is unaware of any software within Defendant's Website which detects if someone with screen reader software is visiting its Website (**Exhibit C**, page 24 lines 7-19). Screen reading software is the only mode for blind individuals to independently navigate Defendant's Website, in addition to the fact that the specified instances are all pertinent steps of completing the order or re-fill of a prescription, or for the printing/downloading of weekly specials and/or coupons on Defendant's Website.

Defendant also has made no efforts to remediate the above-mentioned issues since the filing of the Complaint in December 2016. Nor has Defendant made any such effort since the filing of the *Gil* Complaint (Southern District/ Miami Division) in July of 2016. To not have estimated the cost of remediation nine months after the filing of a complaint alleging ADA violations related to its Website supports the conclusion that Defendant has willfully disregarded the blind community and intends to continue to treat Plaintiff and other blind individuals as second class citizens with respect to its services.

Defendant received the Report by Equal Entry, LLC, Accessibility Issues regarding the www.winndixie.com website on December 2, 2016 (**Exhibit B**). Plaintiff's expert determined that "The Winn Dixie website has significant blocking issues in many WCAG 2.0 categories." Such barriers prevent equal access to blind users when assessing the top-level pages of Defendant's Website. (**Exhibit B**). Defendant's website was tested to assess whether it meets the needs of customers and potential customers who use screen readers in order to understand

website content and make purchases. Under analysis, Plaintiff's expert concluded that Defendant's Website does not meet minimum US standards for accessibility and stated that Defendant should "Make sure all content can be accessed and operated with a keyboard." (**Exhibit B**, page 5). This remediation information necessary to estimate the cost of improvements to its website is fully available to Defendant and within Defendant's control to consider. As such, Defendant does not provide a Website that is sufficiently compatible with screen reading software to satisfy effective navigation and is fully aware of the discrimination it poses to the blind community.

**C. Plaintiff is Entitled to Injunctive Relief Under the ADA**

Injunctive relief is appropriate when there is other remedy at law. In the instant case the Plaintiff has sued under the ADA which has no provisions for damages, his only remedy is seek relief from this Honorable Court. No price can be put the Plaintiffs exclusion from the independent activity of shopping for oneself.

42 U.S.C. § 12188(a)(2) provides for injunctive relief under the ADA, including "an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter." Accordingly, injunctive relief mandating the removal of the communication barriers encountered by a plaintiff may be ordered by the Court in appropriate cases.

This is one of those cases. The federal courts have certified classes in actions seeking injunctive relief under the ADA with respect to websites. (*See*, e.g., *Shields*, supra, 279 F.R.D. at 559; *National Federation of the Blind v. Target Corp*, supra, 582 F. Supp. 2d at 1191.)

Moreover, the DOJ has entered into consent decrees and settlement agreements with defendants in ADA website cases whereby the defendants agreed to conform their websites to

the WCAG 2.0 Guidelines. Defendants should at least be required to comply with the federal government's promulgated website accessibility standards under Section 508 of the Rehabilitation Act.

42 U.S.C. §12188(a)(2) provides for injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. Where appropriate and to the extent required by 42 U.S.C. §12188(a)(2), injunctive relief shall also include requiring the provision of auxiliary aids or services, modification of policies, or provision of alternative methods.

With this background, this Court should order Defendant to comply with a minimum standard to allow blind individuals to simply find products and make a use its websites most important features. Most of which pertinent issues, are set forth in the Accessibility Report prepared by expert, Equal Entry, LLC (**Exhibit B**).

## IV. CONCLUSION

Based on the foregoing, Plaintiff Walter Joseph Beckman is entitled to judgment as a matter of law and Plaintiff's motion for partial summary judgment should be granted, leaving the matter for adjudicate as to the Class, pending certification of the Class and hearing on Class certification.

Dated this 31th day of March, 2017.

Respectfully Submitted,

*s/ Scott R. Dinin*
**Scott R. Dinin, Esq.**
LAW OFFICES OF SCOTT R. DININ P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Telephone: (786) 431-1333
Facsimile: (786) 513-7700
Email: inbox@dininlaw.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using CM/ECF, and that I have served a true and correct copy of the foregoing by email to the following on this 31st day of March, 2017 to:

Susan V. Warner
NELSON MULLINS RILEY & SCARBOROUGH, LLP
50 N. Laura Street, 41st Floor
Jacksonville, Florida 32205
Tel: (904) 665-3600
Fax: (904) 665-3699
email: Susan.warner@nelsonmullins.com
*Attorneys for Defendant, Winn-Dixie Stores, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

Civil Action Number: 3:16-cv-00706-MCR-CJK

WALTER JOSEPH BECKMAN,
On His Own Behalf, and On Behalf
of All Other Individuals Similarly Situated,

Plaintiff,

vs.

WINN DIXIE STORES, INC.

Defendant

---

**CERTIFICATION OF WORD COUNT**

---

I HEREBY CERTIFY THAT THE MEMORANDUM OF LAW CONTAINS 7,762 WORDS, MEASURED FROM THE MEMORANDUM OF LAW PRELIMINARY STATEMENT TO THE SIGNATURE BLOCK.

I FURTHER CERTIFY THAT THE MOTION FOR PARTIAL SUMMARY JUDGMENT CONTAINS 183 WORDS MEASURED FROM THE TITLE TO THE SIGNATURE BLOCK.

Dated this 31th day of March, 2017.

*s/ Scott R. Dinin*
**Scott R. Dinin, Esq.**
LAW OFFICES OF SCOTT R. DININ P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Telephone: (786) 431-1333
Facsimile: (786) 513-7700
Email: inbox@dininlaw.com