UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

Civil Action Number:  3:16-cv-00706-MCR-CJK

WALTER JOSEPH BECKMAN, On His
Own Behalf, and On Behalf of All Other
Individuals Similarly Situated,

      Plaintiff,

vs.

WINN DIXIE STORES, INC.

      Defendant

---

## AMENDED CLASS ACTION COMPLAINT

---

COMES NOW Plaintiff Walter Joseph Beckman, on his own behalf and on behalf of all Other Individuals Similarly Situated, by and through undersigned counsel, hereby sue by Defendant Winn Dixie Stores, Inc. ("Defendant") for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and alleges as follows:

### INTRODUCTORY STATEMENT

1.     Like George Wallace standing in the schoolhouse door to further his segregation interests, Winn Dixie refuses to take steps to end segregation of its customers at its business.  The broad mandate of the America with Disabilities Act is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all

aspects of American civic and economic life. That mandate extends to businesses and groceries websites, such as the www.winndixie.com website[1] ("Website").

2.      Plaintiff Walter Joseph Beckman on his own behalf and on behalf of all Other Individuals Similarly Situated brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Winn Dixie Stores, Inc.'s business.

3.      Even recently Title III of the ADA has been judged to apply to websites. Specifically, the Honorable Bryan F. Foster held on March 3, 2016 that the ADA applied to websites where the plaintiff had demonstrated "he was denied full and equal enjoyment of the goods, services, privileges, and accommodations offered by defendant [via its website] because of his disability."[2]

4.      Businesses can make choices (unlike visually impaired individuals) to either make their businesses inclusive or they can make them effective **Zones of Discrimination** and exclude the visually-impaired.

5.      This case arises out of the fact that Defendant has operated its business in a manner and way that completely excludes individuals who are visually impaired from enjoying Defendant's business based upon Defendant's failure to provide effective auxiliary aids and services.

---

[1] Congress expressly stated when passing the ADA, "the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times" and technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required.

[2] **Davis v. Bmi/Bnd Travelware, *2016 Cal. Super. LEXIS 217 (2016).***

6.      Defendant Winn Dixie Stores, Inc. (also referenced as "Defendant") owns and operates Places of Public Accommodation which are grocery and pharmacy stores under the brand name "Winn Dixie." Winn Dixie grocery stores offer for sale to the general public grocery items including, but not limited to: meat, vegetables, dry goods, dairy products, bakery goods, magazines, gift cards, packaged ready-to-eat meals and snacks, and a full service pharmacy. Heretofore, referenced as "grocery and pharmacy (stores)."

7.      Defendant offers a website www.winndixie.com ("Website") which is directly for the benefit of its grocery and pharmacy stores. The Website provides information pages about the Defendant's grocery and pharmacy store products, offerings, and services so the public can enjoy their business.

8.      This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices, to include measures necessary to ensure compliance with federal law, to provide effective auxiliary aids and services in Defendant's business so that Plaintiff (and other individuals who are visually impaired and thus similarly situated) can enjoy and access Defendant's grocery and pharmacy stores (places of public accommodation) in an effective and timely manner, such that their access is not impeded; as such impediment has rendered Defendant's grocery and pharmacy stores not fully accessible to the visually impaired.

## JURISDICTION & VENUE

9.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. §

1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access to effective communications with Defendant's business.

10.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting, business within the within the jurisdiction of this court by virtue of the fact its Website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Further, several of the Defendant's Winn Dixie grocery and pharmacy stores are located in the district.   In addition, the Defendant is authorized by the Florida Department of State Division of Corporations to transact business in the state.

11.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

**Walter Joseph Beckman**

12.     Plaintiff Walter Joseph Beckman (also referred to as "Plaintiff Beckman") is a resident of the state of Florida and resides within the Northern Judicial District, is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

13.     Plaintiff Walter Joseph Beckman is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h).   Walter Joseph Beckman is substantially limited in performing one or more major life activities, including (but not limited to) accurately visualizing his world and adequately traversing obstacles.

14.     Plaintiff Beckman cannot use the computer without the assistance of screen reader software.

**Other Plaintiffs Similarly Situated – Class Members**

15.     Other plaintiffs similarly situated to Plaintiff Beckman ("Class Members") are qualified individuals with disabilities under, and as defined by, the ADA.

16.     Other plaintiffs are similarly situated to Plaintiff Beckman (and therefore are Class Members) by virtue of the fact that they are visually impaired and require screen reader software (which is commercially available) in order to comprehend internet websites and acquire information in order to visit physical service/payment centers.

17.     Other individuals similarly situated are also unable to comprehend the Website offered by Defendant without the aid of assistive devices.

**Winn Dixie Stores, Inc.**

18.     Defendant Winn-Dixie Stores, Inc. (also referenced as Defendant) is the owner and operator of a chain of grocery and pharmacy stores under the brand name "Winn Dixie."

19.     At all times material hereto, the Defendant Winn-Dixie Stores, Inc. was (and is) grocery and pharmacy store chain wherein all of its grocery and pharmacy stores under the Winn-Dixie brand are open to the public. The Defendant's grocery retail stores are over 40,000 square feet and offer a full range of grocery goods including (but not limited to) fruits, vegetables, dairy products, meats, dry goods, miscellaneous household items, bakery goods, delicatessen (which includes a lunch counter that serves hot and cold food), pharmacy, and financial services (such as Western Union) to the general public.

20.     The Defendant owns and/or operates 513 grocery stores and pharmacy stores in Florida, Alabama, Louisiana, Georgia and Mississippi.

**FACTS**

21.     Plaintiff Beckman's disability limits major life activities, and he requires assistive technologies, auxiliary aids and services for effective communication.

22.     Plaintiff Beckman frequently utilizes the internet. Due to the fact that he is legally blind, in order to effectively communicate and comprehend information available on the internet, Plaintiff uses commercially available screen reader software to communicate / interface with the various websites.

23.     At all times material hereto, Defendant Winn Dixie Stores, Inc. was (and is) an organization which owns and operates a chain of grocery and pharmacy stores under the brand name "Winn Dixie."   Each Winn Dixie grocery and pharmacy store is open to the public.   As the owner and operator of grocery and pharmacy stores, Defendant is defined as a "Public Accommodation" within meaning of Title III; 42 U.S.C. §12181(7)(E) and §12181(7)(F).

24.     By virtue of being a grocery and pharmacy stores open to the  public, each of Defendant's Winn Dixie grocery and pharmacy stores are a Place of Public Accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E), §12181(7)(F) and 28 C.F.R. Part 36. Defendant's Winn Dixie grocery and pharmacy stores are also referenced throughout as "Place(s) of Public Accommodation," "Winn Dixie (grocery and pharmacy) stores," or "grocery stores."

25.     Not all of Defendant's grocery stores include pharmacies.  Therefore, the 'pharmacy locator' within its Website is an important feature in the public's accessing

6

goods and services.

26.     The Defendant controls, maintains, and/or operates a  collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.winndixie.com ("Website").

27.     The deposition of Winn Dixie's Corporate Representative dated December 2, 2016, revealed that the Defendant had expended $2.3 million dollars in a capital investment on a complete Website site update and replacement in September 2015.

28.     The Defendant's Website services the various Winn Dixie grocery and pharmacy store locations, allows the general public to fill/refill medicine prescriptions on-line (for in-store pick up or delivery), provides information on its Winn Dixie brand products,  and (among other things) provides: home-cooking recipes and tips, information about product recalls, and other services (such as providing various brochures, e-books and magazines).

29.     Since the Defendant's Website allows the public the ability to locate one of the many Winn Dixie grocery store/pharmacy locations, the Website is an extension of the physical Winn Dixie grocery stores and on-site pharmacies. Therefore, the Website has a direct nexus between the Website and the Defendant's Winn Dixie grocery stores and on-site pharmacies, hence the Website is also characterized as a Place of Public Accommodation; 42 U.S.C. § 12181(7)(E).

30.     The Website also allows the general public access to fill-refill pharmacy prescriptions for in-store pick up or delivery. As such, the website is a sales establishment, which is a public accommodation pursuant to 42 U.S.C. § 12181(7)(F) and

must comply with the ADA. This means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the general public.  As such, the Defendant has subjected itself and the website it has created and maintains, to the Americans with Disabilities Act ("ADA").[3]

31.    The Defendant's Website also provides information on specials and promotions, which the public can take advantage of when shopping in Defendant's stores in order to obtain special prices and savings.

32.    Plaintiff Beckman is a long-time customer of Defendant's grocery and pharmacy stores prior to losing his vision, and has tried to remain a customer of Defendant's stores.

33.    Due to Plaintiff Beckman's visual impairment, Plaintiff cannot comprehend signs and paper printed information.

34.    Plaintiff Beckman has become increasingly frustrated while shopping at Defendant's grocery and pharmacy store in his neighborhood because he has been unable to comprehend or obtain information at the store.

35.    Therefore, when shopping at his local Winn Dixie store, Plaintiff Beckman has taken to asking Defendant's employees for information on specials and for information on products.  In response, Defendant's employees have directed and/or instructed Plaintiff Beckman to go online to Defendant's Website to learn about Winn

---

[3] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

Dixie specials, promotions, and product information[4] which he has inquired of them in the store.

36.     Therefore, during the month of December 2016, Plaintiff Beckman attempted on several occasions to utilize Defendant's Website to educate himself as to the Winn Dixie merchandise, Winn-Dixie services, coupons, and circulars, and the Winn Dixie online pharmacy (with the intent of using Defendant's pharmacy to fill a prescription in the future).

37.     The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which when utilized allows individuals who are visually impaired to communicate with internet website(s).

38.     The Website contains access barriers that prevent free and full use by visually impaired individuals using keyboards and screen reading software, thus denying him and other similarly situated the opportunity and ability to ***Effectively Communicate*** with the Defendant.

39.     Defendant has not provided its business information in any other digital format that is accessible for use by the blind and visually impaired individuals such as Plaintiff Beckman and other individuals similarly situated.

40.      The Defendant's business contains access barriers that prevent, impair, impede and obstruct the Plaintiff and other visually impaired individuals using keyboards and screen reading software from free and full use of Defendant's Website.

41.     The Website also lacks prompting information and accommodations necessary to allow visually impaired individuals who use screen reader software to locate

---

[4] Winn Dixie's Website also has recipes, magazines and articles, but Plaintiff is also unable to access this information.

and accurately fill-out online forms to fill and re-fill prescriptions for the purposes of filling and refilling prescriptions from that Website.

42.    Plaintiff Beckman attempted to locate any *Accessibility Notice* which would direct him to a webpage with contact information for disabled individuals who have questions, concerns or who are having difficulties communicating with the business. However, he was unable to do so because no such link or notice was provided.

43.    The fact that Plaintiff Beckman could not utilize Defendant's Website left him feeling excluded and prevented him from patronizing Defendant's physical Winn Dixie (grocery and pharmacy) stores.

44.    This exclusion Plaintiff Beckman experienced resulted in him being segregated from other customers at Defendant's business and left him feeling isolated, stigmatized, and humiliated.

45.    Plaintiff was unable to become informed of the Winn Dixie merchandise, specials, and promotions in order to benefit from Winn Dixie's weekly specials (i.e.: to participate the shopping experience in the same manner as provided to the public).

46.    Plaintiff Beckman contends that, by failing to provide him with effective auxiliary aids and services, Defendant has failed to provide him (a blind individual) the ability to shop independently, cost-effectively, and efficiently. Therefore Plaintiff Beckman has ceased to patronize Defendant's business.

47.    Plaintiff Beckman continues to desire to patronize Defendant, but is unable to do so, as the impediments and obstructions within Defendant's business have prevented him from receiving the best prices on products (through the use of coupons and

weekly specials), and from receiving product information, and other benefits of shopping at Winn Dixie stores as enjoyed by the sighted public.

48.     The ineffective auxiliary aids and services provided by Defendant will cause the Plaintiff (and others with vision impairments) continuous and ongoing harm unless enjoined by this Court.

49.     Because of there is a clear and unambiguous nexus between Defendant's stores and its Website and the fact that the Website clearly requires input from Defendant's stores for its operation and use, the Website is a Place of Public Accommodation subject to requirements of the ADA in of itself.

50.     The Website is so poorly functional for visually impaired individuals who require screen reader software[5], that any utilization of the website becomes a barrier to effective communication that prevent full and equal use (of the Website) by individuals with disabilities who are visually impaired.

51.     Defendant has no Web Accessibility Policy to insure full and equal use of the Website by individuals with vision disabilities so that those individuals can effectively communicate with the Website.[6]

52.     Defendant has no Web Accessibility Committee to insure full and equal use of the Website by individuals with vision disabilities so that those individuals can effectively communicate with the Website.[7]

53.     Defendant has no employee as a Web Accessibility Coordinator to insure full and equal use of the Website by individuals with vision disabilities so that those

---

[5] Amputees, the Blind, Low Vision, Injured Veterans, Elderly Vison Infirmed, and other vison impaired groups.
[6] Deposition of Winn Dixie Corporate Representative dated December 2, 2016
[7] Deposition of Winn Dixie Corporate Representative dated December 2, 2016

individuals can effectively communicate with the Website.[8]

54.     Defendant has no Web Accessibility User Accessibility Testing Group to effective communication between the Website and individuals with visual disabilities.[9]

55.     Defendant has no User Accessibility Testing Group to insure full and equal use of the Website by individuals with vision disabilities so that those individuals can effectively communicate with the Website.[10]

56.     Defendant has no Bug Fix Priority Policy.[11]

57.     Defendant has no Automated Web Accessibility Testing program.[12]

58.     Defendant has never created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired to ensure effective communication of its Website with individuals that are visually impaired.[13]

59.     Defendant has not created and instituted on the Website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have the www.winndixie.com website, Applications, and Digital Assets accessible to the visually impaired community by its providing effective communication.[14]

60.     The Website does not meet the Web Content Accessibility Guidelines

---

[8] Deposition of Winn Dixie Corporate Representative  dated December 2, 2016
[9] Deposition of Winn Dixie Corporate Representative  dated December 2, 2016
[10] Deposition of Winn Dixie Corporate Representative  dated December 2, 2016
[11] Deposition of Winn Dixie Corporate Representative  dated December 2, 2016
[12] Deposition of Winn Dixie Corporate Representative  dated December 2, 2016
[13] Deposition of Winn Dixie Corporate Representative  dated December 2, 2016
[14] Deposition of Winn Dixie Corporate Representative  dated December 2, 2016

("WCAG") 2.0 Basic Level of web accessibility[15] to provide for effective communication with their customers.[16]

61.   Defendant does not have an effective communication and Web Accessibility Policy.[17]

62.   Defendant has not instituted an Auxiliary Aids and Services Accessibility User Testing Group to insure full and equal use of the Defendant's Auxiliary Aids and Services by individuals with disabilities.

63.   Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its Website to visually impaired individuals who want the safety and privacy of filling and re-filling prescriptions from the Winn Dixie pharmacy as offered on its Website online from their homes.

64.   Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided at its business.

65.   Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

66.   The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as the www.winndixie.com website.[18]

---

[15] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)
[16] Expert Report provided by Equal Entry LLC prepared December, 2016
[17] Deposition of Winn Dixie Corporate Representative  dated December 2, 2016

67.     On information and belief, the Defendant is aware of the common access barriers and barriers to effective communication within its Auxiliary Aids and Services which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein, including but not limited to: i) Winn Dixie grocery and pharmacy store locations, ii) to become informed of the Winn Dixie brand merchandise available in Winn Dixie stores, iii) to become informed of promotions and specials on grocery items, and iv) to fill and re-fill prescriptions with the Winn Dixie pharmacy online on Defendant's Website.[19]

68.     On information and belief, Defendant is aware of need to provide full access to all visitors to its www.winndixie.com website.[20]

69.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired as those individuals are unable to effectively communicate with Defendant's Website.

70.     Such barriers result in punishment and isolation of blind and low vision from the rest of society.

71.     According to the National Federation for the Blind[21], there are over seven million Americans with visual disabilities (which makes up 2.3% of the population), and

---

[18] Congress expressly stated when passing the ADA, "the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times" and technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required.

[19] Expert Report prepared by Equal Entry, LLC December 2016
[20] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g. (www.internetretailer.com/2016/04/01/web-accessibility-what-e-retailers-need-know) (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance)
[21] Statistics for 2015, see  https://nfb.org/blindness-statistics

there are 469,300 individuals with visual disabilities living within the state of Florida[22].

72.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices, for himself and on behalf of Class Members.

73.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of Plaintiffs' rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

74.     Plaintiff Walter Joseph Beckman has retained the civil rights law firm of Scott R Dinin, P.A. to represent him in this important case involving the unequal treatment of blind individuals, and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## CLASS ACTION ALLEGATIONS

75.     Plaintiff Walter Joseph Beckman brings this case as a class action pursuant to Federal Rule of Civil Procedure Rule 23, in that the class is so numerous that joinder of all members is impracticable F.R.C.P. Rule 23(a)(1), there are questions of law and fact common to the class F.R.C.P. Rule 23(a)(2), the claims and defenses of the representative party is typical of those of the class F.R.C.P. Rule 23(a)(3), and Plaintiff Beckman  (as representative party) will fairly and adequately protect the interests of the class F.R.C.P Rule 23(a)(4).

---

[22] 469,300 is the number of non-institutionalized (male and female, all ages and ethnicities) reported to have a visual disability in 2014; see https://nfb.org/blindness-statistics

76. Pursuant to the F.R.C.P. Rule 23(a), (b)(1), (b)(2), and (b)(3), Plaintiff Beckman brings this action as a class action on behalf of himself and all others similarly situated as members of the Class ("Class Members'), defined as follows:

> All visually impaired individuals who utilize screen reader software to comprehend internet websites who reside within the State of Florida (and those counties which Defendant has Winn Dixie grocery stores), who were customers of Winn Dixie grocery stores and pharmacies since January 1, 2016[23], being those visually impaired individuals who went online to the website www.winndixie.com and were denied means of effective communication with the Website in the course of their online activities to inquire Winn Dixie grocery and pharmacy store locations, inquire about promotions, specials, and coupons available at Winn Dixie grocery stores, and to fill and/or re-fill prescriptions at Winn Dixie pharmacies[24].

77. The "Class Period" is January 1, 2016 to the present.

78. Excluded from the Class are: Defendant, its employees, its legal representatives, assigns, and successors, any entity which owns/controls Defendant and its agents and assigns, and any entities in which Defendant has a controlling interest. Also excluded is the Judge to whom this matter has been assigned, and including the Judge's immediate family.

79. Plaintiffs reserve the right to revise the Class definition based upon facts learned in the course of litigating this matter and through the discovery process.

80. According to the National Federation for the Blind[25], there are 7,327,800 Americans with visual disabilities living within the United States and 494,900 such individuals with visual disabilities living within the state of Florida. Thus, the Class Members to be represented by Plaintiff Walter Joseph Beckman consist of visually

---

[23] or who were acting on behalf of others, whom were customers of Winn Dixie grocery and pharmacy stores
[24] Preliminary estimate is 500 to 1,000 individuals.
[25] Statistics for 2013, see http://www.NFB.org/blindness-statistics

impaired individuals in the Florida. As such, the Class is so numerous that a joinder of each individual member is impracticable; F.R.C.P. Rule 23(a)(1).

81.     Plaintiff Beckman is representative of the Class due to the fact that he suffers from a qualified disability, in that he is visually impaired and requires screen reader software interface in order to comprehend and effectively communicate with public accommodations on the internet, such as Defendant's Website.

82.     Defendant has discriminated against Plaintiff Beckman and the members of the Class by denying effective communication of its Website.

83.     The questions of law and fact relating to the representative Plaintiff Beckman are similar and common to the law and fact questions which would be raised by other members of the Class if they were individually named plaintiffs herein.

84.     Similarly, the claims and defenses to be raised by and against the parties herein are typical of the claims or defenses which would be raised by the members of the Class if they were a party to this action.

85.     Plaintiff Beckman seeks injunctive relief for the implementation of the relief provide by the ADA which is the same relief which would be sought by each class member if he or she brought a claim individually.  Accordingly, Plaintiff Walter Joseph Beckman (as representative parties for the Class) will fairly and adequately protect the interests of the Class.

86.     The relief sought herein is for the benefit of all members of the Class and consistent injunctive relief should be provided for each member of the Class.

87.     Absent this matter being pursued as a Class Action, most of the Class Members would find the cost of litigating their claims to be prohibitive and would have

no effective remedy.

88.    Further, prosecution of this matter by individual members of the Class would only create a risk of inconsistent and varying adjudications and the establishment of incompatible standard by the Defendant and adjudication which may be dispositive of the interest of the other Class members.

89.    Defendant has failed to provide any mechanism within its website by which to adequately serve visually impaired individuals such as Plaintiff Beckman and Class Members. The Defendant has been and is operating its Website in violation of Plaintiff's and Class Members' rights as protected by the ADA. Plaintiffs and Class Members are entitled to injunctive relief. 42 U.S.C. §12188.

90.    There are many questions of law and fact regarding Effective Communication which are common to Plaintiff and the Class Members and those questions predominate over any questions that may affect individual Class Members.

91.    The questions of law and fact common to Class Members predominate over any questions affecting the individual Plaintiffs or individual Class Members. As a result, this class action is the optimal method for reaching a fair and efficient adjudication of the controversy raised herein.

92.    Plaintiff Beckman and Class Members have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for and injunctive relief is their only means to secure adequate redress from Defendants unlawful and discriminatory practices.

93.    Plaintiff Beckman and Class Members will continue to suffer irreparable injury from Defendant's intentional acts, policies, and practices set forth herein unless

enjoined by the court.

94.     Notice to Defendant is not required as a result of its failure to cure the violations.

### COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

95.     Plaintiff Walter Joseph Beckman on his own behalf and on behalf of Class Members re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-94 above.

### Requirement for Effective Communication

96.     It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

97.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems."  28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

98.     Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

99.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

100.    Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Defendant's Business is A Place of Public Accommodation**

101.    By virtue of the fact that Defendant's grocery and pharmacy stores are open to the public, each grocery and pharmacy store is a place of public accommodation subject to the requirements of Title III of the ADA; §§s 12181(7)(E) and (F).  The ADA prohibits any and all barriers which would limit access by the visually impaired to such places of public accommodation.

102.    The virtual barrier to access is just as real as a physical barrier to access, for without  information as to the goods and services offered and ability to investigate and choose a grocery and pharmacy store and to receive information on promotions, coupons, and specials, the visually impaired have no access to the goods and services of that grocery and/or pharmacy store, which is both a Public Accommodation and a Place of Public Accommodation.

**The Website As A Place of Public Accommodation**

103.    Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the

ADA to websites of public accommodations[26]; see Statement of Interest filed by the Department in *Juan Carlos Gill v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

104.    District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. See, *Juan Carlos Gill v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #32] Order Denying Defendant's Motion for Summary Judgment, quoting from *Gomez v. Bang & Olufsen Am., Inc.,* No. 16-23801 at 9 (citing *Rendon v. Vallycrest Prods., Inc.* 249 F.3d 1279 (11th Cir. 2002) for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss).

105.    The Courts have held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

---

[26] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

106.    Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[27]; see Statement of Interest filed by the Department in *Juan Carlos Gill v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

107.    Pursuant to 42 U.S.C. §§s 12181(7)(E) and (F), Defendant is a *Public Accommodation* under the ADA because it owns and/or operates the www.winndixie.com website, as defined within §§s 12181(7)(E) and (F), and is subject to the ADA.

108.    Pursuant to 42 U.S.C. §§s 12181(7)(E) and (F), www.winndixie.com is a *Place of Public Accommodation* under the ADA because it provides the general public the ability to learn about Winn Dixie grocery specials and coupons and with the ability to fill and re-fill pharmacy prescriptions for in-store pick up. Further, the Website also serves to augment Defendant's Winn Dixie stores by providing the public information on the various locations of Winn Dixie stores and to educate the public as to Winn Dixie grocery/merchandise.

109.    In addition, Defendant's representatives within its physical grocery and pharmacy store locations have referred customers to Defendant's Website for additional information, as the Website provides information regarding product information,

---

[27] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

promotions, specials, and coupons, such that the Website is an integral part of the public's needs with respect to Defendant's business.

110.    By Defendant's representatives referring the public /visually impaired individuals  to its Website for reference to information on goods and services, promotions, specials, coupons and product information instead of providing such information at the physical store locations, the Website has been rendered an integral part of Defendant's physical business locations. Thus, the failure of that Website to be accessible to visually impaired individuals impedes visually impaired individuals (such as Plaintiff Beckman) from fully accessing the Defendant's physical business locations.

111.    It is clear that the ADA applies to the Defendant's Website, as the Website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

112.    The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d at 200 (D. Mass. 2012)[28] *Netflix,* (citing H.R. Rep. 101-

---

[28] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the

485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc*., 97 F. Supp. 3d, 574 (same) (D. Vt. 2015)[29] (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

113.    Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

114.    Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

115.    In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied

---

website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.

[29] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services

services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

**Barriers to Access**

116.    As a result of the inaccessibility of Defendant's physical places of business precipitated by barriers within its Website, visually impaired individuals are denied full and equal access to Winn Dixie store physical locations as Defendant has made available to the public through the information provided on Defendant's Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

117.    Types of website programming errors include (but are not limited to) *Programming Error Types* ("PETs"), which are easily identifiable and correctable, and *Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible.

118.    More violations may be present on other pages of the Website, and they will be determined and proven through the discovery process.

119.    The Defendant's Website contains one or more links to a PDF attachment such as: i) weekly advertisement circular (https://coupons.winndixie.com/weeklyad)[30], ii) Winn-Dixie Flavor magazine (https://www.winndixie.com/shopping/flavor-magazine),

---

[30] also see: http://circular.winndixie.com/flyers/winndixie-emagazine?flyer_run_id=195385&type=1&hide=3day%2Cflyerflip%2Cflyerflipbiweekly%2Cflyerfliplong duration%2Cflyerflipmonthly%2Cflyerflipweekly%2Cgrandopening%2Cinstoreflyer%2Cliquorstore%2Cp ricecompare%2Cweeklyad&postal_code=33138&store_code=0233&is_store_selection=true&auto_flyer= &sort_by=#!/flyers/winndixie-emagazine?flyer_run_id=195385

iii) Winn-Dixie Grilling Guide brochure (https://www.winndixie.com/shopping/grilling-guide), iv) cookbooks (https://www.winndixie.com/shopping/departments/kosher/wd-jamie-geller), and v) coupons (https://www.winndixie.com/savings/printablecoupons).

120.    The PDF attachment's flat program does not contain accessible coding. The PDF document does not include a text-based format (or equivalent). Defendant has not added 'alt[31]' tags or long descriptions for the PDF within its Website. The PDF attachments have not been provided in HTML or with a text equivalent, and is not a webpage[32], therefore, it is inaccessible to the visually impaired

121.    Plaintiff Beckman and other individuals similarly situated are unable to comprehend the numerous PDF attachment files within the Website, and as such have been denied the ability to receive services and advantages of the sited public, in violation of the ADA.

122.    Further, the Website does not offer include the universal symbol for the disabled[33] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

123.    Therefore, due to Plaintiff Beckman's disability and the failure of the Defendant's Website to be adequately accessible to individuals with visual impairments, Plaintiff Beckman was unable to communicate effective with Defendant.

---

[31] 'alt' refers to 'alternative text'

[32] (which is an internet document usually in HTML)

[33]  , or HTML "Accessibility" link for those individuals who are visually impaired

124.     There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating the basic Auxiliary Aids and Services components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

125.     The Defendant has violated the ADA (and continues to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendant's Auxiliary Aids and Services. These violations within Defendant's Website are ongoing.

**Violations of the ADA**

126.     As a result of the inadequate development and administration of Defendant's Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

127.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Walter Joseph Beckman and other individuals similarly situated injunctive relief; including an order to:

a)  Require Defendant Winn Dixie Stores, Inc. to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.winndixie.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website;

b) Require Defendant Winn Dixie Stores, Inc. to take the necessary steps to make the Website  readily accessible to and usable by visually impaired users, and during that time period prior to the www.winndixie.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made; and

c) Require Defendant Winn Dixie Stores, Inc. to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of viewing and locating Winn Dixie stores (locations) and becoming informed of Winn Dixie grocery specials and merchandise, and to fill and re-fill prescriptions online (with the Winn Dixie pharmacies located within its Winn Dixie grocery stores), and during that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate,  to provide an alternative method for individuals with visual impairments to effectively communicate for such goods and services made available to the general public through Defendant's Website.

128.    Plaintiff Walter Joseph Beckman has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff Walter Joseph Beckman is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Winn Dixie Stores, Inc.

## **DEMAND FOR RELIEF**

**WHEREFORE,** Plaintiff Walter Joseph Beckman, on his own behalf and on behalf of all Other Individuals Similarly Situated, hereby demands judgment against

Defendant Winn Dixie Stores, Inc. and requests the following injunctive and declaratory relief:

a) The Court to certify this matter as a Class action on behalf of the Class defined above, appoint Plaintiff Walter Joseph Beckman as Class representative, and appoint the undersigned as Class counsel;

b) The Court issue a declaratory judgment that Defendant Winn Dixie Stores, Inc. has violated the Plaintiffs' rights as guaranteed by the ADA;

c) The Court enter an Order requiring Defendant Winn Dixie Stores, Inc. to update its www.winndixie.com website in order that individuals with visual disabilities can effectively communicate with the Website to the full extent required by Title III of the ADA;

d) The Court enter an Order requiring Defendant Winn Dixie Stores, Inc. to clearly display the universal disabled logo[34] within its Website, wherein the logo would lead to a page which would state Defendant's policies on effective communication as well as its accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of effective communication features and the availability of the accessible features of the www.winndixie.com website;

e) The Court enter an order requiring Defendant Winn Dixie Stores, Inc. to provide ongoing support for effective communication via its web

_____

[34] 

accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

f) The Court enter an Order directing Defendant Winn Dixie Stores, Inc. to evaluate its policies, practices and procedures toward persons with disabilities for purposes of providing effective communication, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures to its Website;

g) The Court enter an Order directing Defendant Winn Dixie Stores, Inc. to establish a policy of for effective communication for its Website to insure effective communication for individuals who are visually impaired;

h) The Court to award injunctive and equitable relief as applicable, including:

   i.   prohibiting Defendant from engaging in the acts alleged above; and

   ii.  requiring Defendant to provide effective communication to users of its Website.

i) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees; and other equitable relief as the Court deems proper; and permanent injunctive relief prohibiting Defendant from engaging in the conduct and practices complained of herein; and

j) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 6th day of April 2017.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk

of Court using CM/ECF, and that I have served a true and correct copy of the foregoing

by email to the following on this7th day of April, 2017 to:

Susan V. Warner
NELSON MULLINS RILEY & SCARBOROUGH, LLP
50 N. Laura Street, 41st Floor
Jacksonville, Florida 32205
Tel: (904) 665-3600
Fax: (904) 665-3699
email: Susan.warner@nelsonmullins.com
*Attorneys for Defendant, Winn-Dixie Stores, Inc.*